MORIAL, Judge.
Defendant Jack Honeycutt d/b/a Commercial Contractors (Commercial) appeals from a judgment of the district court in favor of Chartres Corporation (Chartres) in the amount of $4,634.74.
Commercial was engaged in the construction of a housing project at Fort Polk, Louisiana. Commercial determined that it would use a specialized flooring material called “Dex-o-Tex” to cover the balconies of the housing project. Crossfield Products (Crossfield), Pascagoula, Mississippi the manufacturer of “Dex-o-Tex” was contacted by Commerical about purchasing the product. Commerical was informed by Crossfield of its policy of limiting the sale of “Dex-o-Tex” to factory trained applicators. Crossfield required distributors of “Dex-o-Tex” to provide purchasers with a factory trained expert to supervise the installation of this specialized product. This expert supervision included a determination of the suitability of the floor base for the application of “Dex-o-Tex.” Ronald Byrd, one of Crossfield managers referred Commercial to Chartres, a factory trained distributor and applicator of “Dex-o-Tex”. Chartres and Commercial had several discussions after which Chartres ordered the materials from Crossfield and had them delivered to the job site in June 1973. During the discussions Chartres agreed to send an expert to advise and instruct Commercial with regard to the installation of “Dex-o-Tex”. Some time after the materials were delivered to the job site, Chartres sent an expert to inspect the job site. The exert determined that the sub-base of the balconies was not suitable for the application of “Dex-o-Tex”.
Chartres sent Commercial an invoice for $335.00 for the expert’s services. In late November, Commercial sent a wire to Crossfield requesting the proper address to which it was to return the materials. The materials were returned to Crossfield on December 15, 1973.[1] Neither a manager nor a supervisor of Crossfield were present at the time of delivery. Later that week a Crossfield manager took an inventory of the materials that had been returned by Commercial. He determined that some of the materials were missing and a portion of the remaining materials were rendered useless by exposure to moisture and improper storage. These materials were discarded by the factory.
Chartres received credit for the materials returned in usable condition, but was billed a 15% restocking charge of $1,037.83. Chartres was also billed $3,261.91 for the materials which had been determined to be useless and which were discarded. Plaintiff paid Crossfield. Chartres sued Commercial for the costs of the discarded materials, the 15% restrocking charge and the expert fee of $335.00.
The district court found for plaintiff without any reasons for judgment. We reverse.
Chartres was a factory trained applicator of “Dex-o-Tex” and, as such, had a superior knowledge with regard to the handling, and prerequisites for installation of this specialized material. It is reasonable to conclude that an experienced manufacturer trained distributor would know or should know that “Dex-o-Tex” could not be placed on every flooring base used in the construction industry. In view of plaintiff’s special knowledge and experience relating to the installation of “Dex-o-Tex” it came under a duty to ascertain the suitability of the sub-base prior to ordering and having shipped a *1253 large and valuable quantity of a special type of materials without having first inspected the fitness of the sub-base. Chartres acted negligently and, therefore, should sustain any loss incurred as a result of its improper conduct.
Furthermore, a buyer has the right to reserve to himself the right to inspect and try a product to determine if the product is fit for him and its intended use. Until the buyer is satisfied with the trial, which is a kind of suspensive condition of the sale, the sale is incomplete. See LSA-R.C.C. Article 2460. In this case, the determination of the suitability of the floor base by the expert was a kind of suspensive condition. LSA-R.C.C. Article 2471 provides that a sale, made with a suspensive condition does not transfer the property to the buyer, until the fulfillment of the condition. If the thing is destroyed before the condition occurs, the loss is sustained by the seller. The finding by Chartres expert of non-suitability of the floor base to receive the application of “Dex-o-Tex” rendered the fulfillment of the suspensive condition impossible and prevented the consummation of the contract of sale. Therefore, the risk of loss was never shifted to Commercial. Chartres remained responsible for the preservation of the goods at all times during the transaction and thus liable for any losses incurred.
For the foregoing reasons the judgment of the district court is reversed. Appellee is to pay all costs.

REVERSED.

. Defendant being unable to obtain instructions from the plaintiff regarding the return of the merchandise had it delivered to Crossfield at its expense.